May it please the Court. Dan Jackson of Kecker and Van Nest, appearing as appellate counsel for LaWanna Porter. I'd like to reserve two minutes and any other remaining time for rebuttal. In 1995 and 1996, LaWanna Porter was sexually harassed by Sgt. Terry Wheeler and Officer Pete DeSantis of the Dept. of Corrections. I don't want to interrupt you too early, but the one thing can you make sure that you cover if there is a sexual harassment case, is that after the Supreme Court's opinion in Morgan, what acts must be alleged within the 300 days of the filing of the action? I mean, can you address that particular point? Because I think that the District Court did talk about Morgan and I'm assuming that you're going to take exception with the District Court's interpretation there, so. Yes. Because obviously you have conduct over a long period of time and in talking about the hostile workplace, that's what it can be used for if it's outside the 300 days. Right. Within the limitations period, a plaintiff must allege acts that contributed to the hostile work environment, and if the acts contributed to the same hostile work environment that existed before the limitations period, the hostile work environment that existed before the limitations period can be taken into account for purposes of liability. Here, within the limitations period, Porter was subjected to repeated acts of retaliatory harassment, which served to reinforce and maintain the hostile work environment that existed throughout her employment at the Department. Well, let's take specifically acts with regard to defendant or to DeSantis. What protected activity did she engage in, which she had complained about or reported, for which DeSantis could have retaliated against her within the relevant time period? So now we're moving back to the retaliation claim. Yeah. She rejected DeSantis' advances, and with regard to Wheeler, she rejected his advances and reported his harassment. Okay. And the protected activity that she had engaged in was what? With respect to Wheeler, with respect to DeSantis, resisting his sexual advances. Okay. And she reported that when, in relation to when the acts occurred? She reported DeSantis' sexual advances after the transfer denials. So the protected activity that occurred before the transfer denials was her resisting his sexual advances. And what's the time period between the acts and the denial on the transfer, vis-à-vis DeSantis? She resisted his advances in 1996, and then in 1997, DeSantis became the personnel assignment sergeant. So before that time, he simply didn't have the means for taking adverse employment actions against Porter. But as soon as he became the personnel assignment sergeant, he used that position repeatedly to deny her request for vacation time. But don't you have to show a nexus? In other words, are you asking or are you suggesting that because of the fact that the alleged act of protected activity occurred prior to the time that DeSantis was in a position to take action in retaliation against her, that that's sufficient to survive on a motion to dismiss? This Court has held that the motivations for employment actions, the causes of those actions, are very difficult to ascertain. But we said you have to show a nexus. Right. So I guess my question is, aside from temporal, the fact that one followed the other, whatever the time period was, what's the nexus? Well, one, I think, very compelling piece of evidence is that when, after she had been on the graveyard shift for years, and after DeSantis became the personnel assignment sergeant, she went to ask if there were other positions available. DeSantis responded, not for you. Okay. And that was several years after she had rejected his advances. That was two years after she had rejected his advances, but he had shown his hostility throughout that period. Okay. And is it your position that, notwithstanding the Supreme Court's latest pronouncement, that that's a sufficient nexus? The Supreme Court in Breeden held that there are two events. The cause and effect must be very close in time if the plaintiff's only evidence of causation is the temporal proximity between the two events. But the problem, as I understand it, is I guess you're trying to allege a theory that acts by others in the interim would have been sufficient to establish this environment in which different supervisors were acting as agents of other supervisors. Is that it? No. We're saying that the plaintiff's prima facie burden to show causation is minimal, as this Court has held. And, for instance, the fact that there were other positions available and when she asked for them, DeSantis said, not for you, that standing alone is enough to create a triable issue whether he had retaliatory motives. No matter what the period of time is between the alleged protected activity and the alleged act of retaliation. Suppose it were five years later. I think that if a person says, I have a retaliatory, I dislike you, but they wait, to allow temporal proximity itself to become an element of the claim so that a supervisor can express and admit his desire to retaliate against an employee, but avoid liability for doing so simply by waiting long enough to take his revenge, that's not the law. Temporal proximity is just a way of proving causation. Isn't the law designed to encourage employees to report immediately the acts so that the employer can conduct an appropriate investigation and take appropriate disciplinary action if the charge is sustained? And the problem here, as I see it, is that you're asking us to ignore the fact that Congress has provided a very short timeframe within which the employee must make a complaint, and you're asking us to infer nexus. We're not asking the Court to ignore the statute of limitations. The two transfer denials that are the basis of the retaliation and quid pro quo harassment claims occurred within the limitations period. Now, as I understand it, the employer has proffered that because of her status as an apprentice or whatever, the journeyman correctional officer, that there was a limitation on the number of, I'll call them, inexperienced correctional officers that could be assigned to the same shift. So does that then shift the burden back to Porter on a retaliation claim to show that, no, the real reason was because I rebuffed his advances two years ago? Yes, and here again, the burden of showing pretext is also minimal, and we have the testimony. What evidence does she have vis-à-vis DeSantis to refute that proffered reason? The testimony of Lieutenant Orr, who said that there was – that DeSantis' justification didn't follow departmental procedures and was very suspicious. The testimony of Officer Leidecker, who said that it was – also thought it was very suspicious. And the fact that DeSantis, for instance, said that he had Captain Smith's permission to change the assignments, but Captain Smith told Lieutenant Orr that he didn't know anything about it. With regard to the hostile work environment claim, the district court – in Draper v. Kaur, this court held that a supervisor's hostile retaliatory conduct contributed to the same hostile work environment that existed before that was caused by his unwanted sexual advances. So the continuing violations doctrine applied to make the unwanted advances actionable, even though they occurred outside the limitations period. The same analysis applies here. Within the limitations period, Porter was subjected to repeated acts of retaliatory harassment that served to reinforce and maintain the hostile work environment that existed the entire time she worked there. But the district court refused to apply the continuing violations doctrine, holding that as a matter of law, the retaliatory conduct was unrelated to the other acts of harassment. And was that because, again, of the time that had elapsed? The Supreme Court has held that the mere – in Morgan, that the mere lapse of time was not sufficient to render the continuing violations doctrine inapplicable. I come back to the same – and I guess this is my concern with your claim here, Mr. Jackson. I'm sort of analogizing this to overt acts and furtherance of a conspiracy. And there has to be some factual link to tie the acts together. It seems to me that you have to do more than simply say Act A occurred in 1995, Act B occurred in 1997, Act C occurred in 1998. And my theory is hostile work environment, continuing violations doctrine, they're all related. Don't you have to show more? I think the conspiracy is a good example. Here we have repeated – a repeated pattern of activity where retaliatory conduct made women, including Porter, afraid to report the sexual harassment that was so pervasive at the department. So it's like threatening a witness to keep her from testifying about a conspiracy is part of that conspiracy and constitutes a continuing violation. The same analysis applies here. Just about used your time if you want to save some time for it. Okay. Thank you. Good morning. My name is Diana Cuomo, and I represent the Respondent Department of Corrections. I'd like to start by addressing the sexual harassment statute of limitations issue. The error in appellant's analysis is that you can take a series of events without any analysis of whether or not they are related at all, as long as event A happened and then there's events later, regardless of the time period, regardless of the nature of the acts, you can blur them all together for a continuing violation. And that analysis is wrong. Title VII sets up different standards, different unlawful employment practices. The court in Morgan has informed us that when you are evaluating unlawful employment practices, you look at the nature of the act, and then you apply and you determine what the unlawful employment practice is, and then you apply the statute of limitations. So you have to identify the wrong, then you have to determine what acts constitute the same wrong. And in this case, we've got a series of events that happened in 95 and 96, and those are the events, most importantly, that the plaintiff, the appellant herself, has characterized as sexual harassment. In her own testimony, she doesn't even perceive the events thereafter as sexual harassment. Those are the events. But what she calls them to, I mean, that's not really what, you know, her nomenclature, that isn't really what's significant, is it? It's the conduct. It is the conduct that is significant. You have to look at the conduct and see if it's sufficiently related, if it's the same type. But it's important, too, that she did not perceive the events after 95 and 96 as sexual harassment. So the notion that something that she did not perceive as sexual harassing could become sexually harassing seems not to be consistent with the definition of sexual harassment. But more importantly, you have to look at the nature of the act. Well, but there's some pretty serious conduct alleged over a period of time here. And while there's a temporal, while there is a span here, is it your position that there's, she can do, that the time span alone means that there can be no nexus? Well, my position is that the time span creates a statute of limitations problem with regard to the sexual harassment claim. And then secondly, that the time span creates a problem with respect to the causation element of the prima facie case of retaliation. Well, I have a, I have a question. Is, when did the perpetrator here become in a position to take adverse action against her? Well, under the theory that harassment can be an adverse employment action, he was in a position at all times to take some sort of adverse employment action against her. But he did become the personnel assignment sergeant December 1, 1997. And the underlying premise of the appellant's argument on, with regard to retaliation is that that position alone gave him the opportunity to deny job changes. Well, any inference from, for instance, the May 1998, or excuse me, the comments in December of 1997 that you're not going to get a second watch job are offset by the fact that the minute he is in actually a position, according to her theories, to deny job changes, he gives her a second watch job or she gets a second watch job. So we, it's not really a case where we had a person that didn't have an opportunity. He had an opportunity all along to, he could have harassed her. He could have talked to the records supports. There is evidence in the records that he could have talked to other sergeants about the job. I thought, I thought that what he, she was complaining about was that he overrode a transfer that, that she had obtained. She is complaining about three transfer, three job changes that she didn't get, that one of them was R0222, which he actually did cancel that job change. The evidence supports that. There are several others. And that happened fairly soon after he became in a position to do that or not? No. That happened, that specific job change happened in July of 1998. He became the personnel assignment sergeant in December of 1997. Within a month after that period of time, she became, she was put into a second watch job. Well, let me ask you this then. Why then, you said that was July of 98. Why then did the district court find that the acts comprising hostile work environment all occurred prior to June 26, 1998? Didn't the court determine that? Yes, the court determined, and in fact, all of the acts according to the plaintiff's testimony regarding hostile work environment occurred before January 19, through January 1996. The July 1998 act that I was referring to in response to questions is an act of alleged retaliation. It's a job change denial that happened after, two years after this rejection of the advances made in 95 and 96. Well, now, did the district court determine that the transfer that was rescinded was done for legitimate purposes? The court addressed that issue. The court didn't need to get to that issue. But I'm wondering if the court did. Can the court really do that? It seems like that's a factual issue. Well, the court did address it in a footnote and determined that the department had presented legitimate business reasons and that appellant had not presented enough evidence of pretext. And the court was only in a position with regard to job RO222 because that was the only job that there was actual evidence from which we could ascertain a legitimate business reason. I misspoke. The other job changes were not sufficiently proven such that we could rebut them with a legitimate reason. Well, it just seemed to me that the court was resolving factual issues when the court made that determination, and that's what you're not supposed to do on a summary judgment. Well, the court evaluated whether or not there was sufficient evidence of pretext and determined that there wasn't. That evaluation can be made without getting into tribal issues. In fact, the court looked at undisputed facts and determined whether or not there was sufficient evidence to support pretext. There was substantial ---- Sufficient evidence. If there was evidence of pretext to support a finding that there was pretext. If there was no ---- it found there was no evidence, or was it weighing the evidence and saying, I don't think this is ---- The court, excuse me, the court found that there was no evidence of pretext, that she had not met the burden of proof to establish pretext. Let me make sure I have the chronological. She gets the first transfer is to second watch, which by definition is better hours, and then the other two transfers are to post within that watch. Is that it? These RO-222 and 332 and whatever they were? Yes, they're all second watch jobs, different posts throughout the institution. Okay, but different assignments and different days off, and therefore, had the motive been improper, that could constitute an adverse act. Well, it is the department's position that a job change in the context of the job duties of a correctional officer do not constitute an adverse employment action, the reason being that correctional officers, part and parcel of their job, is to be able to cover all of the posts. They are routinely in a situation where they're bidding for posts, and they're routinely So that could never be an adverse job action? That applies in the case of Ray v. Henderson, doesn't it? Well, under Ray v. Henderson, things like a transfer could be an adverse employment action, but this is not a transfer. This is you're going to work the cash register over there instead of the cash register over here. Ray v. Henderson, it was we moved the postal delivery guy from one route to a less desirable route. I don't see that as any different from transferring from a more desirable post on a watch to a less desirable. Particularly if they're bidding on it. Well, I think in this case, the difference between this case and Ray is that it's part and parcel of the correctional officer's duties that they're going to be in different posts on a regular basis. Well, and mailmen have to deliver the mail, but there are better routes. Yeah, right. Would you rather go through Beverly Hills or Compton? Exactly. Well, most importantly, we do not need to reach that issue because we don't have evidence of causation to support the Prima Fascia case of retaliation. And that is because, most importantly, there's a 29-month gap between the rejection of the advances and the subsequent alleged adverse employment actions. And there's nothing in between that period, no evidence of any acts between that period that give rise to an inference, support an inference of causation. And I want to direct the Court's attention to the fact patterns in the Bell v. Clackamas County case from this Court and the catchmark case, I believe, from the Third Circuit. And in those cases, there is a certain pattern of events. There's a temporal nexus. There's comments, glares, things that are made, done in a context, comments made that, you know, because you engage in this protected activity, you're off the management track, you're not going to get a good evaluation. That's the catchmark case. In the Bell case, there's a glare by the supervisor after he leaves a meeting where he's informed of the complaints. In our case, the evidence that the appellant has put forth suggesting causation doesn't even get close to the evidence that the Court found was relevant to causation in the Bell case. This case is more like the Minot case and the Villarimo cases from this Court. So I direct the Court's attention to compare those four cases in evaluating the evidence of causation. The State's position is there has to be something more than a mere Act A, Act B, Act C. There has to be something to link them as an act of retaliation. Back to that protected act. Yes. In this case where there's a 29-month gap, close proximity could evidence causation. But in this case, we don't have that, so we need something else. We've got a 29-month gap. But didn't the district court disallow evidence that it perceived outside the statute of limitations even for the purpose of showing the nexus? The court did not evaluate. I mean, it seemed to me that that was part of what occurred. It's not only there's the issue of what might be out the statute of limitations, but then there's evidence there that isn't for liability, I think, as the appellant said, but can be used for other purposes. The district court did not address the evidence in or did not specifically in their decision address the evidence in the interim, which is minimal, if anything. And if that failure to do that, if there was a failure, is harmless because there's no evidence in that period of time that suggests or supports an inference of causation or causation. People can hold a grudge for a long time. This is true, but we don't have any evidence that there was a grudge. Okay. Thank you. Thank you. Thank you. You've more than used your time.  This statement in the end evidence shows that as soon as DeSantis made the personnel assignment, and Porter asked if there were other positions available, he said, not for you. Then, repeatedly, he said the same thing when she asked for vacation time. That, I think, is more than enough evidence to meet Porter's minimal prima facie burden of showing causation. Thank you. The case just argued is submitted for decision. We'll hear the next case.
judges: Schroeder, Tallman, Callahan